# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                  Case No. 06-CR-339

RONALD BANKS,

        Defendant.

## RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT REGARDING THE DEFENDANT'S MOTIONS TO SUPPRESS AND ORDER

On December 13, 2005, Ronald Banks ("Banks") was charged in a criminal complaint with having distributing more than fifty grams of crack cocaine in violation of Title 21, United States Code, Section 841(a)(1)(b)(1)(A). On December 19, 2006, the grand jury returned a two count indictment alleging in count one that Banks distributed more than five grams of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) and Title 18, United States Code, Section 2, and in count two that Banks distributed more than fifty grams of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

On January 11, 2007, Banks filed motions to suppress his identification and to suppress statements. Banks has requested an evidentiary hearing to resolve these motions. On January 17, 2007, the court denied Banks' request for an evidentiary hearing regarding his motion to suppress his identification, but granted Banks' request as to his motion to suppress statements on the alleged basis that his arrest was not supported by probable cause.

On February 8, 2007, an evidentiary hearing was conducted before this court. A summary of the evidence adduced at this hearing is set forth below. A final pretrial is scheduled for March 8, 2007 and a jury trial is scheduled to commence on March 19, 2007 before the Honorable Charles N. Clevert.

## SUMMARY OF EVIDENTIARY HEARING

The only witness to testify at the evidentiary hearing was Raymond Taylor ("Taylor"), a Special Agent with the Wisconsin Department of Justice. Taylor testified that on September 3, 2004, at about 6:00 P.M. he readied a confidential informant ("CI") to engage in a "controlled buy." This CI was presently facing drug charges and was cooperating with law enforcement in the hopes of obtaining a more favorable resolution of those pending charges. The CI had arranged to purchase a quantity of cocaine from Montrell Johnson ("Johnson"). The CI was equipped with a recording device and a body wire and given a sum of money with which to purchase controlled substances. Prior to conducting the controlled buy, the CI's person and vehicle were searched.

The controlled buy occurred in the area of 24th and Townsend Streets, in the City of Milwaukee. Taylor described this area as being under the control of the Brothers of Struggle ("BOS") street gang and as "tight," meaning that unfamiliar persons and vehicles are readily identifiable to persons in the neighborhood. Given these facts, and BOS' known propensity for violence, law enforcement was not able to keep the CI under constant surveillance out of the fear that doing so may jeopardize the safety of the CI.

Law enforcement did observe the CI stop his vehicle and a black male enter the vehicle. The transaction was completed at approximately 6:21 p.m. and at 6:26 p.m., the agents met with the CI and debriefed him. The CI turned over to the agents a plastic bag containing a substance that later tested positive as cocaine base. The CI's person and vehicle were again searched.

2

Case 2:06-cr-00339-CNC   Filed 02/13/07   Page 2 of 11   Document 21

The CI reported to Taylor that he met with Johnson and another unknown black male got into the front seat of the vehicle. Johnson identified the unknown black male as "B.I." This was confirmed by the audio recording of this conversation. The CI reported the B.I. produced cocaine and gave it to Johnson who in turn gave the cocaine to the CI. The CI then gave $1,200.00 to B.I.

On September 7, 2004, the CI participated in another controlled buy, during which the CI met with B.I. alone. B.I. contacted the CI by telephone and instructed the CI to go to 24th Street and Auer Avenue in the City of Milwaukee. This location is approximately two blocks from where the first controlled buy occurred and again, is an area under the control of BOS; therefore, law enforcement was again unable to maintain constant surveillance of this transaction out of fear that doing so would jeopardize the CI's safety. The same controlled buy procedures that were utilized in the first controlled buy were utilized in this second controlled buy. The CI was given over $2,000.00 and upon meeting with the agents following the transaction, the CI provided the agents with a substance that tested positive for cocaine base. The CI did not meet up the agents at a pre-arranged location but rather the CI contacted law enforcement following the controlled buy and informed the agents where they could meet him. Agents met the CI a few minutes following the completion of the transaction.

From September 7, 2004 until the end of November, 2005, the CI conducted more than five additional controlled buys. One of these controlled buys was video taped. The CI was also able to introduce an undercover agent to a suspect whereby the undercover agent was later able to purchase controlled substances from the suspect.

Through other CIs and police officers who regularly patrolled the neighborhood where the transactions occurred, the agents learned that B.I. was the nickname of the defendant, Ronald Banks. On September 30, 2004, law enforcement had the CI view a photo array. The CI identified Banks as the person he met with on September 3 and 7, 2004 and who was identified by Johnson as

3

B.I. When the CI made this identification on September 30, 2004, the CI was in custody facing charges for a crime that he allegedly committed between September 7, 2004 and September 30, 2004.

On November 25, 2005, Taylor was the affiant for a state search warrant. This search warrant and affidavit, received into evidence as Exhibit 2, contains information from two confidential informants. The first confidential informant ("CI-1"), states that he was inside the target residence, a duplex located at 3426 N. 23rd Street in the City of Milwaukee, within the last seven days and met with Banks and another upper level member of the BOS gang. At this time CI-1 observed Banks and this other BOS member with more than three grams of cocaine. Within the last 72 hours, CI-1 was again inside the target residence and observed unknown individuals in the residence with more than one gram of cocaine. CI-1 further stated that he knew Banks to drive a blue Suburban with 24" rims.

CI-1 is believed to be truthful and reliable because CI-1 had previously provided Taylor with accurate information regarding the identity of a person responsible for a double-homicide and had previously provided accurate information regarding BOS members that was sufficiently detailed that led Taylor to the conclusion that CI-1 was very close to these BOS members.

The second confidential informant ("CI-2") referenced in the affidavit, is believed to be truthful and reliable because he has made five successful controlled buys that resulted in criminal charges. Additionally, CI-2 introduced undercover law enforcement officers to individuals believed to be trafficking narcotics. As a result of these introductions, the undercover law enforcement officers were able to purchase cocaine from the persons introduced by CI-2.

Within the last 72 hours, CI-2 was inside the target residence and observed several unknown black males inside, one of whom had more than two grams of cocaine base packaged for sale. CI-2 also stated that he was acquainted with Banks and knew Banks to be a member of the BOS street

gang. Further, CI-2 knew Banks to drive a blue truck with 24" rims. Within the last five days, Taylor located a powder blue 1989 Suburban parked in front of the target residence. This vehicle was not registered to Banks.

Based upon this affidavit, a search warrant was issued for the target residence as well as the powder blue Suburban. Prior to executing the search, agents observed Banks leave the target residence and enter the Suburban. Agents followed the Suburban to a residence in the area of 45th Street and Fond du Lac Avenue in the City of Milwaukee. Agents observed Banks enter this residence. Law enforcement executed the search warrant at the target residence. During the execution of the search warrant, numerous persons attempted to flee the residence by jumping out of windows. These persons were apprehended by law enforcement. Cocaine, scales, and drug paraphernalia were recovered from the target residence.

Law enforcement then went to the residence in the area of 45th and Fond du Lac and knocked on the door. A female who identified herself as Banks' girlfriend answered the door and allowed the agents to enter. The agents located Banks, and Banks was arrested without incident. Following his arrest, Banks was taken by law enforcement to another location where within 45 minutes or an hour he made a statement.

## ANALYSIS

**Motion to Suppress Statements**

The sole basis raised by Banks for suppression of his post-arrest statements is that his arrest was not supported by probable cause. The evidence adduced at the evidentiary hearing demonstrates that Banks' arrest was supported by ample probable cause and therefore this court shall recommend that Bank's motion to suppress statements be denied.

An arrest is constitutionally valid if, at the moment the arrest was made, the arresting officers had reasonably trustworthy information that would cause a reasonably prudent person to

5

believe that the arrestee had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175-176 (1949); Henry v. United States, 361 U.S. 98, 102 (1959)). Probable cause is a flexible concept and is based upon common sense. Xing Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999) (citing Texas v. Brown, 460 U.S. 730, 742 (1983)). An arresting officer's belief need not be more likely true than false for there to be probable cause to arrest. Id.; United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citing United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992)). Rather, "[s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citing United States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993)). However, only the facts known to the arresting officer at the time of the arrest may be considered; facts discovered after an arrest are irrelevant to the question of whether there was probable cause to arrest a person. Id. at 953-54 (citing Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994); Maltby v. Winston, 36 F.3d 548, 557 (7th Cir. 1994)).

Evaluating the totality of the circumstances and the information known to the officers at the time of Banks' arrest, the court believes that there was ample probable cause to arrest Banks. Banks argues that the CI was of suspect reliability and therefore evidence obtained in reliance upon the CI alleged purchases of cocaine from the defendant are insufficient to constitute probable cause. First, Banks points to the fact that the CI was a defendant cooperating in hopes of receiving favorable consideration regarding the charges he was presently facing. Thus, given these motivations, in Banks' view, the CI was inherently unreliable. Second, during both controlled buys, law enforcement failed to maintain constant surveillance of the CI and did not observe the alleged transaction. Therefore, Banks argues that it is possible that the CI obtained the cocaine base that he delivered to the agents from another source.

6

Certainly, the average CI who is cooperating with law enforcement simply to gain a more favorable resolution of his pending criminal charges, is to some degree inherently unreliable. See United States v. Peck, 317 F.3d 754, 758 (7th Cir. 2003) ("[M]ost CIs have a bias against the defendant or something to gain from their statements."). However, that is certainly not to say that these valuable law enforcement assets be completely discounted from the probable cause calculus. Rather, law enforcement officers must take steps to verify the information obtained from such a confidential informant. The officers in this case took such reasonable steps ensure the accuracy of the information received from the CI. Rather than merely accepting the CI's word, the agents followed the CI during the alleged purchases. Although the agents were not able to keep the CI under constant visual surveillance out of fear of jeopardizing the CI's safety, the audio of the CI's interactions was recorded, and therefore the agents were able to confirm the CI's reports. Additionally, the CI was out of the agents' view for a minimal amount of time. Although a single controlled buy would have likely been sufficient to constitute probable cause, the fact that two controlled buys allegedly occurred creates a stronger inference that Banks probably committed a crime.

After these two controlled buys, Banks was known only as "B.I." Investigation with other CIs and other police officers identified B.I. as Banks. The agents then confirmed this identification by conducting a photo array with the CI. The CI identified Banks as being B.I. from an array of six substantially similar photographs. Thus, based upon the two controlled buys, the agents had probable cause to arrest Banks. However, the two controlled buys were not the only probable cause that the arresting officers possessed when they arrested Banks.

Agents who arrested Banks possessed substantially more information than merely the two controlled buys. There was ample evidence to connect Banks to the residence located at 3426 North 23rd Street. Agents observed Banks leave this residence soon before his arrest. Additionally, as

7

detailed in the affidavit for the search warrant, received as Exhibit 2, CI-1 met with Banks inside this residence and observed Banks with more than three grams of cocaine. CI-1 stated that Banks was a high level member of the BOS street gang and at least partially responsible for keeping the 23rd Street residence supplied with cocaine.

CI-2 also spoke with Banks at the 23rd Street residence and CI-2 further stated that the 23rd Street residence is Banks' drug house. The fact that the affiant, Agent Thomas, was able to verify that Banks had three adult felony drug convictions is corroborative of all the information received from the CIs. This information of particularly relevant because, based upon the date of birth provided in the affidavit, Banks had just turned 25 the day before the search warrant was executed and thus these convictions would have necessarily been relatively recent.

Banks does not, nor reasonably could he, challenge the fact that there was probable cause to support the search of the 23rd Street residence. The facts that formed the basis for probable cause to search the target residence also formed a basis for probable cause to arrest Banks given Banks' demonstrated relationship to the target residence.

Finally, prior to arresting Banks, the agents were aware that cocaine, scales, and drug paraphernalia were recovered from the target residence pursuant to the search warrant. Given that there was ample evidence to connect Banks to the target residence, this fact corroborated the information provided by the CIs and provided support further support for the conclusion Banks had probably committed any of a number of drug related crimes. Thus, this court finds no support for Banks' argument that there was insufficient probable cause for his arrest. Therefore, the court shall recommend that his motion to suppress his statements be denied.

**Motion to Suppress Identification**

In support of this argument, Banks points to the fact that the confidential informant was in police custody at the time he made the identification and thus his likely desire to curry favor with

law enforcement may have affected the reliability of his identification. The government responds by arguing that the fact that the CI was in police custody is insufficient to render the identification procedures impermissibly suggestive.

To determine if a pretrial identification was inherently suggestive or otherwise conducive to a mistaken identification, the court conducts a two step inquiry by asking first whether the identification procedure employed was unduly suggestive, and second if so, whether the identification was reliable despite the suggestiveness. Gregory-Bey v. Hanks, 332 F.3d 1036, 1045 (7th Cir. 2003); United States v. Funches, 84 F.3d 249, 253 (7th Cir. 1996). The defendant fails to present any argument as to how the CI's custodial status rendered the identification procedure unduly suggestive.

Only if the defendant demonstrates that the identification procedure was inherently suggestive must the court proceed to analyze the second prong and determine whether under the totality of the circumstances that identification was nonetheless reliable despite the suggestiveness. The CI's custodial status may bear some relevance to this second prong, although the defendant has not cited and the court was unable to locate any case in which the witness' custodial status was considered as a factor in evaluating the reliability of the identification procedure. In any event, this court need not consider the second prong of reliability because the defendant has not presented any argument as to how the procedures used were unduly suggestive. Having reviewed the photo array, received as Exhibit 1, the court finds nothing unduly suggestive about it. The array depicts six black males all of whom are of similar ages, and have similar builds, hair styles, facial structures, facial hair, and skin tones.

Therefore, because this court finds no basis to conclude that the identification procedures utilized in this case were unduly suggestive, the court shall recommend that the defendant's motion to suppress his identification be denied.

9

**Motion to Disclose Confidential Informant**

Banks seeks the immediate disclosure of the identity of the confidential informant who allegedly participated in the two controlled purchases of cocaine base from Banks. The government has responded to Banks' motion, and agrees that the confidential informant's identity is discoverable as a transactional witness. However, the "government suggests that notification of the identity of the confidential informant within 10 days of trial is reasonable, and in keeping with the usual practice in this district." Banks has not replied to the government's response.

The court suspects that the government does not actually intend what it has said in its response. Rather, the court suspects that the government has offered to disclose the identity of the confidential informant *not less than* 10 day before trial rather than at some unknown point within that 10 day period. The defendant has not offered any reason as to why this district's standard practice or ordering disclosure of confidential informants not less than ten days prior to trial should not apply in this case. Therefore, this court shall order that the government disclose the identity of the confidential informant who participated in the transactions referred to in the indictment not less than ten days prior to trial, which is presently scheduled to commence on March 19, 2007.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress statements be **denied**.

**IT IS FURTHER RECOMMENDED** that the defendant's motion to suppress his identification be **denied.**

**IT IS FURTHER ORDERED** that the defendant's motion for the immediate disclosure of the confidential informant is **denied**; the government shall disclose the identity of the confidential informant no later than ten days before the trial date.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed

within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 13th day of February, 2007.

s/AARON E. GOODSTEIN<br>U.S. Magistrate Judge